1  Jeffrey T. Lindgren (CA SBN 176400)
   jlindgren@vbllaw.com
2  Christopher L. Larson (CA SBN 308247)
   clarson@vbllaw.com
3  VASQUEZ BENISEK & LINDGREN LLP
4  3685 Mt. Diablo Blvd., Suite 300
   Lafayette, CA  94549
5  Telephone:   (925) 627-4250
   Facsimile:    (925) 403-0900
6
7  Attorneys for Plaintiff
   KITTRICH CORPORATION
8
                **IN THE UNITED STATES DISTRICT COURT**
9
             **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10

11 |  | Case No: 2:17-cv-06211 |
12 | KITTRICH CORPORATION, a California corporation, | **COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, REVERSE CONFUSION, FALSE DESIGNATION OF ORIGIN, PASSING OFF, AND UNFAIR COMPETITION, COPYRIGHT INFRINGEMENT, AND UNFAIR COMPETITION** |
13 |  |  |
14 | Plaintiff, |  |
15 | v. |  |
16 | UNITED INDUSTRIES CORPORATION, a Delaware corporation; LIQUID FENCE COMPANY, a Delaware corporation; SPECTRUM BRANDS HOLDINGS, INC., a Delaware corporation, |  |
17 |  |  |
18 |  | **DEMAND FOR JURY TRIAL** |
19 |  |  |
20 |  |  |
21 | Defendants. |  |

22
23
24
25
26
27
28

COMPLAINT

Plaintiff Kittrich Corporation ("Kittrich"), by and through its attorneys, hereby alleges as follows for its complaint against Defendants United Industries Corporation ("United Industries"), Liquid Fence Company ("Liquid Fence"), and Spectrum Brands Holdings, Incorporated ("Spectrum"):

## I.   SUMMARY OF THE ACTION

1.     This is an action for permanent injunctive relief, and to recover damages for Defendants' willful and malicious acts of trademark infringement, trade dress infringement, reverse confusion, unfair competition, passing off, and false designation of origin under 15 U.S.C. §§ 1114 and 1125(a); copyright infringement under 17 U.S.C. §§ 101 et. seq.; and unfair competition under California Business and Professions Code § 17200.

2.     These claims arise out of the sale of competing home and garden pesticide products at retail outlets across the United States and in the Central District of California.

3.     The Plaintiff, Kittrich, manufactures and sells EcoSmart® pesticides, which are toxic only to insects, not to humans or pets.[1]  Since at least 1999, the EcoSmart brand has emerged as a world leader in bio-pesticides as its patented formulations represent significant innovative advances in the pesticide field.  As a viable alternative to conventional pesticides, EcoSmart bio-pesticide products are among the most successful pesticides in the bio-pesticide product markets.

4.     The pesticidal efficacy and superiority of EcoSmart products are demonstrated by the over forty (40) patents granted by the United States

---

[1] "EcoSmart" is a registered trademark of Plaintiffs. However, for ease of reading, the registered trademark symbol will be used sparingly throughout this complaint.

COMPLAINT                                                                 1

Patent and Trademark Office and foreign patent offices that cover various product formulations.

5.       The EcoSmart commercial image is protected by five (5) federal trademark registrations, and four (4) federal copyrights.

6.       The EcoSmart packaging and trade dress is original, nonfunctional, and distinctive, and has come to be associated with high quality bio-pesticide products.  Examples of the EcoSmart trade dress are shown here (*Figures 1, 2*):



*Figure 1: EcoSmart Trade Dress on Home Pest Control product*



*Figure 2: EcoSmart Trade Dress on Ant & Roach Killer product*

COMPLAINT                                                                                               2

7.     The Defendants have progressively, and unfairly, encroached into EcoSmart's market for pesticides by using a confusingly similar mark, EcoLogic, in combination with a trade dress that is confusingly similar to, and an obvious derivative of, the EcoSmart trade dress.

8.     Significantly, the original EcoLogic brand did not compete in the market for pesticides.  Rather, the Defendants used the EcoLogic mark on lawn care products such as weed killers.  During that time the EcoLogic product packaging was very different from the package it is now using to unfairly compete with EcoSmart:



*Figure 3: Early EcoLogic Packaging*

9.     More recently, Defendants expanded the EcoLogic mark into the market for pesticides and, not surprisingly, at around that time Defendants changed their packaging.  Based upon information and belief, Defendants willfully changed the EcoLogic packaging to substantially mimic the overall commercial impression of the EcoSmart brand and its

distinctive trade dress.  Some examples of Defendants' current trade dress on pesticide products are shown here (*Figures 3, 4*):



*Figure 4: Current EcoLogic packaging, liquid concentrate product*



*Figure 5: Current EcoLogic packaging, aerosol product*

10.     With its new, copycat trade dress, Defendants are now selling the EcoLogic product as a direct competitor to the EcoSmart product in a package that entirely mimics the commercial impression conveyed by the EcoSmart packaging.  A side-by-side comparison demonstrates Defendants'

COMPLAINT                                                                                     4

1  intentional and dramatic actions to change their trade dress to more closely

2  resemble Plaintiff's (*Figure 6*).  As any viewer can see, Defendants

3  dramatically changed both the color and style of the trade dress for the

4  EcoLogic product to mimic the EcoSmart trade dress:



*Figure 6: Side-by-side comparison of early and current EcoLogic*

*trade dress*

20      11.      Upon information and belief, Defendants are using the imposter

21  trade dress across their entire pesticide product line to create the same

22  general overall impression and the same "look and feel" of the EcoSmart

23  brand of minimum risk pesticide products.  In other words, as shown below

24  in paragraphs 46-80, Defendants have introduced numerous new bio-friendly

25  pesticide products, all of which bear trade dress that wholly mimics

26  Plaintiff's trade dress, including  Lawn & Yard Insect Killer, Flying Insect

27  Killer, Bed Bug Killer, Home Insect Control, and Ant & Roach Killer.  A

28

COMPLAINT                                                                    5

side-by-side comparison of  EcoLogic's new trade dress against the

EcoSmart trade dress shows the numerous similarities and confusing result:

 

*Figure 7: Examples of EcoSmart and EcoLogic packaging*

12.    Importantly, unlike in this Complaint, consumers do not have

the benefit of a side-by-side comparison of the competing products.  It is the

clever mimicking of EcoSmart's overall commercial impression that is likely

to cause confusion, mistake or deception for consumers seeking to purchase

EcoSmart products.

13.    Indeed, instances of actual confusion are already being

reported.  As an example, one confused consumer posted a warning on the

Home Depot site, complaining about the EcoLogic product: "*I bought this*

*thinking it was EcoSmart which I've been using for a few years to great*

*success.  It's NOT THE* SAME*.  Same packaging, same colors, same*

*product line, but Home Depot switched to another company and a slightly*

*different name, trying to fool us customers.*"  (Exhibit 1).  As another

example, an EcoSmart customer recently left a comment on the EcoSmart

website (http://www.ecosmart.com) describing the customer's purchase of

COMPLAINT                                                                                          6

an EcoLogic product, saying the EcoLogic product's packaging "looks almost identical to the ecosmart brand" and that due to the similar packaging the customer "accidentally bought [an EcoLogic product] and had to return it because it was absolutely garbage." (Exhibit 2).

14.     Thus, the combination of Defendants' confusingly similar brand name, EcoLogic, and confusingly similar packaging is not only likely to result in consumer confusion, but is already causing confusion and is continuing to do so.  This conduct is believed to have been undertaken intentionally or with reckless disregard for Plaintiff's rights, and has demonstrably damaged the goodwill and consumer loyalty in the EcoSmart brand.  Indeed, this conduct appears to be part of a pattern and practice by Defendant Spectrum (the parent company of Defendants Liquid Fence and United Industries) of changing their packaging to prey on consumer confusion and thereby trade on the brand loyalty and goodwill of popular competing products.  See, *e.g.*, *Energizer Brands, LLC v. Spectrum Brands Holdings, Inc*., Civil Action No. 4:16-cv-02022-CDP (E.D. Mo.).

15.     Defendants also had access to Plaintiff's copyrighted EcoSmart labels, which are affixed on EcoSmart bio-pesticide products available at retail nationwide.

16.     The product labels on Defendants' EcoLogic products are substantially similar to the EcoSmart copyrighted labels.

17.     Based upon information and belief, Defendants intentionally copied or modified protected aspects of EcoSmart's trade dress and thereby created a prohibited reproduction and derivative work of the EcoSmart copyrighted labels.

18.     Defendants have willfully and intentionally mimicked the EcoSmart trade dress and have caused and are likely to cause consumer confusion as a result.

COMPLAINT                                                                                        7

19.     Alternatively, reverse-confusion is also likely to occur when a consumer decides against buying the EcoSmart brand based on a bad experience with an EcoLogic product.

20.     Plaintiff seeks damages arising from Defendants' past and present infringement and permanent injunctive relief against Defendants' continuing use of its infringing trademarks, trade dress, and labels.

## II.    THE PARTIES

21.     Plaintiff Kittrich Corporation is a California corporation with a principal place of business at 1585 W. Mission Blvd., Pomona, California 91766.  Kittrich manufactures and sells EcoSmart pesticides.  EcoSmart pesticides are sold at hardware stores and garden centers throughout the United States, including in the Central District of California.

22.     On information and belief, Defendant United Industries Corporation is a Delaware corporation with its principal place of business at One Rider Trail Plaza Dr., Earth City, Missouri. 63045.  United Industries sells pesticides in the same markets as Kittrich throughout the United States, including in the Central District of California.

23.     On information and belief, Defendant Liquid Fence Company is a Delaware corporation with its principal place of business at P.O. Box 4406, Bridgeton, Missouri. 63044.  Liquid Fence is a wholly-owned subsidiary of United Industries.  United Industries and Liquid Fence merged on or about June 28, 2015.  Prior to being acquired by United Industries, Liquid Fence was a corporation with its principal place of business in Pennsylvania.

24.     On information and belief, Defendant Spectrum Brands Holdings, Incorporated is a Delaware corporation with its principal place of business at 3001 Deming Way, Middleton, Wisconsin.

25.     Spectrum is the parent company of United Industries, which on information and belief operates as the "Home and Garden" division of Spectrum.  On information and belief, Spectrum and its employees manage United Industries' brand portfolio, which includes EcoLogic products.

### III.   <u>JURISDICTION AND VENUE</u>

26.     This is an action for trademark infringement, trade dress infringement, reverse confusion, unfair competition, and passing off under 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"), copyright infringement under 17 U.S.C. §§ 101 *et seq.*, and unfair competition under Cal. Bus. & Prof. Code § 17200.

27.     This Court has subject matter jurisdiction over the Lanham Act and copyright claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

28.     This Court has supplemental jurisdiction over the California state law claims pursuant to 28 U.S.C. § 1367 as they form part of the same case or controversy as the Lanham Act claims.

29.     This Court has personal jurisdiction over the Defendants because Defendants transact business in California and this action arises from this transacting of business, namely, the sale and marketing of EcoLogic products in California.  Defendants' EcoLogic products are available for purchase in the State of California and in this judicial district, and therefore Defendants have engaged in tortious conduct in the State of California and this district.

30.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

COMPLAINT                                                                                    9

# IV.   FACTUAL ALLEGATIONS

**A.   Plaintiff Kittrich and Its Predecessor Established a Safe Pesticide More Than Twenty Years Ago That Continues to Be Well-Known and Recognizable to This Day**

31.   On November 21, 2014, Kittrich acquired certain assets of EcoSmart Technologies, Inc., a Delaware corporation with a former place of business in Roswell, Georgia.  EcoSmart Technologies has sold pesticides under the EcoSmart brand since as early as 1999.

32.   Kittrich became the exclusive owner of the federally registered trademarks EcoSmart – The Safe Pesticide Brand (U.S. Reg. No. 3966816), EcoSmart Organic (U.S. Reg. No. 3729360), EcoSmart (U.S. Reg. No. 3763653), EcoSmart and design (U.S. Reg. No. 2972176), and EcoSmart as a typed drawing (U.S. Reg. No. 3268732) for use with pesticides.

33.   A long and distinguished history of efficacy and safety was established by EcoSmart Technologies and continues to this day.  Plaintiff manufactures and sells EcoSmart  pesticides at hardware stores and garden centers throughout the United States, including in the Central District of California.

34.   EcoSmart pesticides are "bio-pesticides." Bio-pesticides are minimum risk pesticides that meet certain criteria under the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) and consequently are exempt from pesticide registration requirements promulgated by the U.S. Environmental Protection Agency.

35.   "Minimum risk pesticides" are a special class of pesticides that are not subject to the traditionally onerous and expensive federal registration requirements, because their ingredients, both active and inert, are considered demonstrably safe.  Pursuant to Section 25(b) of FIFRA and the federal regulations issued thereunder, certain listed active and inactive ingredients

COMPLAINT                                                                10

are acceptable for use in minimum risk pesticide products.  Therefore, an environmentally benign pesticide product that is safe for use around children and pets will only contain active ingredients appearing on the FIFRA 25(b) active ingredients list and inert ingredients which appear on the FIFRA inert ingredients List 4A.

36.     Synergy of two or more active ingredients is an important feature of the EcoSmart branded safe and effective minimum risk pesticide compositions.  The specially chosen combinations of active ingredients afford the EcoSmart products significantly more efficacy against pests than if a single active ingredient is used in a pesticide formulation.  Such combinations have been painstakingly developed through years of extensive research and validation.

37.     EcoSmart pesticides qualify as bio-pesticides because they rely on essential plant oils as active ingredients, rather than synthetic compounds, which are considered by the general public to be relatively unsafe because they may cause harm to humans and the environment.  The oils used in EcoSmart bio-pesticides are regularly found in many consumable products and do not harm mammals, birds, fish, or water sources.  The primary active ingredients in EcoSmart are approved as Direct Food Additives or classified as GRAS (Generally Recognized As Safe) by the U.S. Food & Drug Administration.  The proprietary blends of plant essential oils found in EcoSmart branded products have been protected by over forty patents around the world, with additional patents pending.

38.     EcoSmart bio-pesticide products occupy a smaller niche market than that of traditional synthetic or non-exempt pesticides.  Accordingly, EcoSmart bio-pesticide products are sold side-by-side with traditional pesticides, but receive less shelf space than their synthetic alternatives.

COMPLAINT                                                                                     11

39.     EcoSmart bio-pesticide products are sold at retail venues throughout the United States and have been sold at major hardware and garden retailers such as Lowes, Home Depot, Ace Hardware, True Value, Menards, and Do It Best stores.  EcoSmart bio-pesticide products are also sold online at http://amazon.com  and http://www.domyownpestcontrol.com.

40.     EcoSmart Technologies and Plaintiff expended considerable effort and resources in promoting the EcoSmart brand by advertising the environmental and safety benefits of EcoSmart bio-pesticide products over synthetic products and by continuing to patent safe and effective blends of natural oils to be used in EcoSmart products.   Due to these efforts, as well as the unique benefits of EcoSmart bio-pesticide products, EcoSmart bio-pesticide products have a loyal following.

41.     EcoSmart bio-pesticide products have used the following packaging elements to create the distinctive commercial impression: a white container with a green cap (for liquid and aerosol products), an image superimposed on a green plantlike background covering the top portion of the packaging, the text "SAFE Around Children & Pets" in white contained in a solid colored background on the upper portion of the packaging, the brand name EcoSmart displayed across the packaging with the prefix "Eco" in light green text and the suffix "smart" in a contrasting color, the name of the particular product below the top image, and an image of an insect in the lower right portion of the packaging, combined with the packaging color palette  (the "EcoSmart trade dress").

42.     The distinctive selection and arrangement of these elements, along with other elements that comprise the total image of the EcoSmart trade dress, is original and nonfunctional and creates a distinct commercial impression associated with the EcoSmart brand. See *Figure 1* for an example of the EcoSmart trade dress.

43.    The distinctive packaging of EcoSmart bio-pesticide products has become so associated with the brand that it communicates the same features as the EcoSmart brand name itself.

44.    Portions of the current EcoSmart trade dress have been used continuously on EcoSmart bio-pesticide products since their introduction around 2006.  The trade dress is distinctive in the markset for bio-pesticides.  Consumers have grown to associate the EcoSmart trade dress with the features and quality associated with the EcoSmart brand.

45.    Since at least 2013, Plaintiff has affixed a copyright notice to the labels of products packaged in the EcoSmart trade dress.  Plaintiff currently holds copyright registrations in the labels for four EcoSmart products.

**B.    The Defendants Produce A Directly Competing Product (Called EcoLogic) And Intentionally Mimic Plaintiff's Trade Dress to Confuse Consumers and Take Away Sales**

46.    On information and belief, United Industries is the exclusive owner of all existing trademark registrations relating to the EcoLogic product line.

47.    On information and belief, Spectrum manages all trademark registrations and branding relating to the EcoLogic product line.

48.    Spectrum lists EcoLogic as one of its brands on the Spectrum website (http://www.spectrumbrands.com).

49.    In its annual corporate filings with the Securities and Exchange Commission, Spectrum lists EcoLogic as a brand name used for insect and weed control solutions sold under its Home and Garden division.

50.    Upon information and belief, the relationship of Defendants is such that each may be held responsible for the acts of the other.

51.     Upon information and belief, Defendant Liquid Fence began selling products under the EcoLogic brand name in September or October of 2009.  Upon information and belief, the EcoLogic brand was originally used on plant growth stimulants, fertilizers, and weed killers, and not on pesticides.

52.     EcoLogic pesticides target the same niche bio-pesticide market targeted by EcoSmart bio-pesticide products.  The active ingredients in all EcoLogic pesticides are blends of essential plant oils, and, like EcoSmart pesticides, EcoLogic pesticides are considered "minimum risk" and are thus exempt from EPA registration requirements.

53.     Importantly, however, upon information and belief, the EcoLogic pesticides are not as efficacious as EcoSmart bio-pesticides because they contain a single active ingredient that has not been shown to be very effective in actual use when compared to the EcoSmart bio-pesticide products, which contains synergistic blends of two or more active ingredients.  Indeed, as shown in paragraph 80 below, customers who mistakenly bought an EcoLogic product have voiced their complaints.  Thus, the EcoLogic pesticides are likely to cause reputational harm to the goodwill associated with EcoSmart products when consumers experience actual or reverse confusion between the two brands.

54.     Many states require manufacturers and distributors of pesticides to obtain registrations even for products exempt from EPA registration requirements.  Upon information and belief, Defendant Liquid Fence has obtained and continues to obtain registrations to sell EcoLogic pesticides in various states where such registrations are required, including in California.

55.     EcoLogic pesticides are sold at retail throughout the United States, including in the Central District of California.

COMPLAINT                                                                                      14

56.     Upon information and belief, Defendant Liquid Fence, Defendant United Industries, and Defendant Spectrum all play a role in the sale, advertising, and distribution of EcoLogic products.

57.     Upon information and belief, Defendants transitioned from the original trade dress packaging (see *Figure 3*) and began using packaging designs that contain elements substantially similar to,  are a derivative of, and are confusingly similar to the overall look and feel of the EcoSmart trade dress for use with EcoLogic pesticides (see *Figure 4*) (the "infringing packaging").  Upon information and belief, Defendants first changed their trade dress on or around April 17, 2015, thereby embarking on a clear and calculated campaign to prey on consumer confusion and trade on the EcoSmart trade dress' extensive reputation and goodwill.

58.     Upon information and belief, Defendants continued to alter their packaging to more closely resemble the EcoSmart trade dress until they arrived at the current iteration of the infringing packaging.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



*Figure 8: Current EcoLogic trade dress*

15

16    59.    Defendants have not merely mimicked the EcoSmart trade dress

17  with the infringing packaging.  Upon information and belief, the factory

18  Defendants are now using to manufacture the infringing packaging is the

19  very same factory that manufactures the EcoSmart trade dress packaging for

20  Plaintiff Kittrich.

21    60.    The infringing packaging includes a white container with a

22  green cap (for liquid and aerosol products), an image superimposed on a

23  green plantlike background covering the top portion of the packaging, the

24  text "SAFE Around Children & Pets" in white contained in a solid colored

25  background on the upper portion of the packaging, the brand name EcoLogic

26  displayed across the packaging with the prefix "Eco" in light green text and

27  the suffix "Logic" in a contrasting color, the name of the particular product

28  below the top image, and an image of an insect in the lower right portion of

COMPLAINT                                                              16

the packaging, all of which are distinctive elements of the EcoSmart trade dress.

61.     Defendants are using the infringing packaging on EcoLogic Lawn & Yard Insect Killer, a product directly competitive with EcoSmart Garden Insect Killer.  Photographs of the two products are produced below:





*Figure 9: Comparison of EcoSmart Insect Killer and EcoLogic Lawn &*
*Yard Insect Killer*

62.     Kittrich is the owner of U.S. Copyright Registration No. VA 2-048-029 for its EcoSmart Insect Killer Product Label.

63.     Defendants' use of infringing packaging on EcoLogic Lawn & Yard Insect Killer is substantially similar to Kittrich's registered copyright in the EcoSmart Insect Killer Product Label.

64.     Defendants are using the infringing packaging on EcoLogic Home Insect Control, a product directly competitive with EcoSmart Home Pest Control.  Photographs of the two  products are produced below:

COMPLAINT                                                                                                18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT

19



*Figure 10: Comparison of EcoSmart Home Pest Control and EcoLogic Home Insect Control*

65.     Kittrich is the owner of U.S. Copyright Registration No. VA 2-048-016 for its EcoSmart Home Pest Control Product Label.

66.     Defendants' use of infringing packaging on EcoLogic Home Insect Control is substantially similar to Kittrich's registered copyright in the EcoSmart Home Pest Control Product Label.

67.     Defendants are using the infringing packaging on EcoLogic Ant & Roach Killer, a product directly competitive with EcoSmart Ant & Roach Killer.  Photographs of the two products are produced below:

COMPLAINT                                                                                    20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





*Figure 11: Comparison of EcoSmart Ant & Roach Killer and*
*EcoLogic Ant & Roach Killer*

68.     Kittrich is the owner of U.S. Copyright Registration No. VA 2-048-023 for its EcoSmart Ant & Roach Killer Product Label.

69.     Defendants' use of infringing packaging on EcoLogic Ant & Roach Killer is substantially similar to Kittrich's registered copyright in the EcoSmart Ant & Roach Killer Product Label.

70.     Defendants are using the infringing packaging on EcoLogic Bed Bug Killer, a product directly competitive with EcoSmart Bed Bug Killer.  Photographs of the two products are produced below:

COMPLAINT                                                                                   22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



*Figure 12: Comparison of EcoSmart Bed Bug Killer and EcoLogic Bed Bug Killer*

24   71.   Kittrich is the owner of U.S. Copyright Registration No. VA 2-

25   048-020 for its EcoSmart Bed Bug Killer Product Label.

26   72.   Defendants' use of infringing packaging on EcoLogic Bed Bug

27   Killer is substantially similar to Kittrich's registered copyright in the

28   EcoSmart Bed Bug Killer Product Label.

COMPLAINT                                                                        24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

73.     Defendants are using the infringing packaging on EcoLogic Flying Insect Killer, a product directly competitive with EcoSmart Flying Insect Killer.  Photographs of the two products are produced below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21    *Figure 13: Comparison of EcoSmart Flying Insect Killer and*
22                    *EcoLogic Flying Insect Killer*

23        74.    Defendants are using the infringing packaging on a multitude of
24   EcoLogic product lines.
25        75.    Defendants are not authorized or licensed to distribute, market,
26   or sell any products incorporating or using the EcoSmart trade dress, the
27   EcoSmart mark, or any imitations thereof.
28

COMPLAINT                                                                    26

76.     Defendants continue to distribute, market, and sell EcoLogic products using the infringing packaging.

77.     Upon information and belief, Defendants' infringement of the EcoSmart trade dress and Kittrich's copyrights is willful and intentional. Defendants had access to the EcoSmart trade dress, which appears on EcoSmart bio-pesticide products that are sold throughout the country. Defendants adopted the infringing packaging after the EcoSmart trade dress had been in use for several years, and the infringing packaging bears little resemblance to Defendants' earliest packaging designs for EcoLogic products.

78.     In adopting the infringing packaging, Defendants have misappropriated the good will associated with the EcoSmart brand to enhance the sale of EcoLogic products.

79.     Defendants had actual access to Plaintiff's copyright-protected EcoSmart labels, which were affixed to products available at retail across the United States.

80.     The infringing packaging contains product labels that are substantially similar to Plaintiff's copyright-protected EcoSmart labels.

81.     Beginning in 2016, EcoLogic products began replacing a number of their direct EcoSmart competitors at major retail outlets.  Upon information and belief, EcoLogic products now occupy roughly the same amount of shelf space at major retailers that EcoSmart bio-pesticide products occupied in years past.  These actions have caused substantial confusion and have harmed Plaintiff's sales, as well as the goodwill and strong reputation as to the high quality of EcoSmart bio-pesticide products.

82.     For example, in 2016, Home Depot stopped carrying EcoSmart bio-pesticide products and filled shelf space previously devoted to EcoSmart bio-pesticide products with EcoLogic products.

83.     One customer commented that the customer was told by a Home Depot sales associate that EcoLogic products are "the same product[s] [as EcoSmart] but they change[d] the labeling." (Exhibit 1).

84.     Several customers asked in the "answers" portion of various EcoLogic product pages on Home Depot's website if the products were EcoSmart bio-pesticide products, demonstrating that they thought the products were somehow related to or affiliated with EcoSmart.   At a minimum, they were confused about the origin of the products.   Questions asked by customers include "is EcoLogic ant & roach aerosol spray the same product as the brand I bought last year name [sic] EcoSmart" and "Did the product change names? Its [sic] been hard for me to find pet friendly sprays, remembering is [sic] was EcoSmart." (Exhibit 1).

85.     A brand representative for Spectrum responded to comments and reviews on the EcoLogic product pages.  (Exhibit 1).

86.     Consumer confusion is compounded when retail stores generate EcoLogic products in response to on-line searches for EcoSmart products. For example, when searching the Home Depot store in Pomona, California for "EcoSmart pesticides," the first result listed is an EcoLogic product.

87.     Although EcoSmart and EcoLogic are both bio-pesticides, the two types of products use different formulations.  The active ingredient in most EcoLogic products is lemongrass oil whereas EcoSmart  bio-pesticide products use patented blends of natural oils that are more effective than lemongrass oil.

88.     Several customers have been disappointed in the quality of EcoLogic products, which did not meet the standards of quality they associate with EcoSmart bio-pesticide products. (Exhibits 1, 2).

**C.    Defendants Are Intentionally Causing Consumer Confusion, Mistake and Harm**

89.    The infringing packaging, including the name EcoLogic, immediately evokes the EcoSmart brand and trade dress and will cause consumer confusion, mistake, or deception as to whether the EcoLogic products are the same as the EcoSmart bio-pesticide products, or new products from the same manufacturer, or have some sort of other affiliation or connection with the EcoSmart brand.

90.    In the alternative, the infringing packaging may cause consumers to believe that EcoSmart products are somehow the same as or affiliated with the manufacturer of the EcoLogic products.

91.    The similarity between Defendants' EcoLogic brand name and the EcoSmart brand name has already resulted in consumer confusion.  Both brands share the same prefix (Eco), while the two suffixes ("Smart" and "Logic") evoke a similar commercial impression.

92.    The combination of the infringing packaging and the similarity of Defendants' mark to EcoSmart is likely to create the misapprehension that the pesticidal ineffectiveness that consumers have found with EcoLogic products are attributable to EcoSmart.

93.    In the alternative, the combination of the infringing packaging and the similarity of Defendants' mark to EcoSmart is likely to create the misapprehension that EcoSmart bio-pesticide products are manufactured by Defendants and are thus of inferior quality, as well.

94.    Upon information and belief, Defendants' infringement of the EcoSmart trade dress and its marketing, distribution, offering for sale and sale of its products in the infringing packaging has generated substantial sales and profits for Defendants and has driven Plaintiff's existing and

COMPLAINT                                                                                                              29

potential customers to purchase products from Defendants, at Plaintiff's expense.

95.     The actual and, upon information and belief, the intended effect of Defendants' use of the EcoSmart trade dress is to cause retail sales staff and consumers to be confused or deceived or to mistakenly believe that Defendants' products sold in the infringing packaging are made, sponsored, endorsed, authorized by, or in some other manner affiliated with EcoSmart, which they are not.  This is especially damaging with respect to those persons who perceive a defect or lack of quality in Defendants' products sold in the infringing packaging.  The likelihood of confusion, mistake, and deception created by Defendants' use of the infringing packaging is thus causing irreparable harm to the goodwill symbolized by the EcoSmart trade dress and the EcoSmart brand name and the reputation for quality that they embody.

96.     Upon information and belief, at a minimum, the actual and intended effect of Defendants' infringement is to draw consumers' attention to Defendants' products in stores due to their infringing appearance that mimics the appearance of the EcoSmart trade dress, and this initial attention will lead consumers to purchase or consider purchasing Defendants' products.

97.     As a direct and proximate result of Defendants' infringing activities, Kittrich is suffering irreparable injury for which there is no adequate remedy at law, including but not limited to the dilution of its brand equity in the eyes of retailers and consumers.  Furthermore, absent injunctive relief, Kittrich will continue to suffer irreparable injury for which there is no adequate remedy at law.

98.     Upon information and belief, Defendants have derived certain direct and indirect benefits and profits from its unlawful distribution,

COMPLAINT                                                                                   30

marketing, and sale of products in the infringing packaging, all at Kittrich's economic and reputational expense.

99.     The foregoing actions by Defendants have caused and will continue to cause Kittrich to suffer damages, including but not limited to lost sales, lost profits, and damaged goodwill.

100.   Upon information and belief, the foregoing acts by Defendants have been willful, wanton, intentional, malicious, and purposeful or in reckless disregard of, or with callous indifference to, Kittrich's rights.

101.   Defendants' foregoing acts have occurred in interstate commerce and in a manner affecting interstate commerce.

102.   The activities of Defendants complained of herein have also damaged Kittrich in an amount that is not yet determined.

## V.     FIRST CLAIM FOR RELIEF

### (Trademark Infringement Under Section 32 of the Lanham Act, 15 U.S.C § 1114)

103.   Kittrich repeats and re-alleges each of the allegations set forth in paragraphs 1 – 94 as if fully set forth herein.

104.   Kittrich is the exclusive owner of EcoSmart – The Safe Pesticide Brand (U.S. Reg. No. 3966816), EcoSmart Organic (U.S. Reg. No. 3729360), EcoSmart (U.S. Reg. No. 3763653), EcoSmart and design (U.S. Reg. No. 2972176), and EcoSmart as a typed drawing (U.S. Reg. No. 3268732) for use with pesticides, which are protectable at law under the Lanham Act.

105.   Defendants' use of "EcoLogic" is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' products offered in conjunction with this mark are affiliated, connected, or associated with EcoSmart bio-pesticide products, or are

COMPLAINT                                                                                    31

1  endorsed, sponsored, or approved by, or otherwise originate from, Kittrich,

2  as the manufacturer of EcoSmart bio-pesticide products.

3      106.   Upon information and belief, Defendants' activities as

4  described above have been willful, wanton, and in deliberate disregard of

5  Plaintiff's trademark rights, and for the purpose of intentionally

6  misappropriating and capitalizing on Plaintiff's goodwill.

7      107.   Defendants' aforementioned acts are exceptional within the

8  meaning of 15 U.S.C. § 1117.

9      108.   As a direct and proximate result of Defendants' acts of willful

10  infringement, Kittrich has suffered damage to the EcoSmart trademark, and

11  other damages in an amount to be proved at trial, including Defendants'

12  profits and Kittrich's lost profits.

13      109.   Kittrich has no adequate remedy at law.  If Defendants'

14  activities are not enjoined, Kittrich will continue to suffer irreparable harm

15  and injury to its goodwill and reputation.

16          **VI.    SECOND CLAIM FOR RELIEF**

17  **(Trade Dress Infringement Under Section 43(a) of the Lanham Act, 15**

18                 **U.S.C. §1125(a))**

19      110.   Kittrich repeats and re-alleges each of the allegations above as

20  if fully set forth herein.

21      111.   Kittrich is the exclusive owner of the EcoSmart trade dress,

22  which is protectable at law under the Lanham Act.  The EcoSmart trade

23  dress is distinctive and non-functional, and has become associated with high

24  quality bio-pesticides from a single source.  The EcoSmart trade dress has

25  acquired secondary meaning by virtue of the widespread distribution of

26  EcoSmart insecticide products in the EcoSmart trade dress at retailers

27  nationwide and the extensive commercial sales of EcoSmart bio-pesticide

28  products in the EcoSmart trade dress.

COMPLAINT                                              32

112.   Defendants are infringing the EcoSmart trade dress in connection with the distribution, marketing, and sale of Defendants' EcoLogic pesticides in infringing packaging in interstate commerce and in a manner substantially affecting commerce.  Defendants' actions (a) are likely to cause confusion or mistake or to deceive the relevant consuming public; (b) are likely to cause consumers to mistakenly believe that Kittrich has manufactured, sponsored,  authorized, or licensed Defendants' products for sale, and/or that Defendants' products are being distributed by an authorized distributor; (c) are, at a minimum, likely to cause consumers' attention to be initially drawn to EcoLogic pesticides due to these products' infringing appearances that mimic the appearance of Kittrich's competing EcoSmart bio-pesticide products; and (d) are likely to damage the reputation and goodwill previously established by Kittrich and EcoSmart Technologies in the EcoSmart brand, products, and EcoSmart trade dress.

113.   Defendants' foregoing acts constitute infringement of the EcoSmart trade dress in violation of the Lanham Act, 15 U.S.C. § 1125(a).

114.   Upon information and belief, Defendants' activities as described above have been willful, wanton, and in deliberate disregard of Plaintiff's trademark rights, and for the purpose of intentionally misappropriating and capitalizing on Plaintiff's goodwill.

115.   Defendants' aforementioned acts are exceptional within the meaning of 15 U.S.C. § 1117.

116.   As a direct and proximate result of Defendants' acts of willful trade dress infringement, Kittrich has suffered damage to the EcoSmart trademark, and other damages in an amount to be proved at trial, including Defendants' profits and Kittrich's lost profits.

117.   Kittrich has no adequate remedy at law.  If Defendants' activities are not enjoined, Kittrich will continue to suffer irreparable harm and injury to its goodwill and reputation.

## VII.    THIRD CLAIM FOR RELIEF

### (Reverse Confusion Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

118.   Kittrich repeats and re-alleges each of the allegations above as if fully set forth herein.

119.   Upon information and belief, Defendants have expended considerable resources in promoting pesticides bearing the EcoLogic name and the infringing packaging.

120.   Defendants are infringing the EcoSmart trade dress and EcoSmart trademarks in connection with the distribution, marketing, and sale of Defendants' EcoLogic pesticides in infringing packaging in interstate commerce and in a manner substantially affecting commerce.  Defendants' actions (a) are likely to cause confusion among consumers as to the source of EcoSmart bio-pesticide products, (b) are likely to cause consumers to believe that Defendants have manufactured, sponsored, authorized, or licensed EcoSmart bio-pesticide products for sale; and (c) are likely to damage the reputation and goodwill previously established by Kittrich and EcoSmart Technologies in the EcoSmart brand, products, and EcoSmart trade dress.

121.   Defendants' foregoing acts constitute reverse confusion under the Lanham Act, 15 U.S.C. § 1125(a).

122.   Upon information and belief, Defendants' activities as described above have been willful, wanton, and in deliberate disregard of Plaintiff's trademark rights, and for the purpose of intentionally misappropriating and capitalizing on Plaintiff's goodwill.

123.   Defendants' aforementioned acts are exceptional within the meaning of 15 U.S.C. § 1117.

124.   As a direct and proximate result of Defendants' acts of willful trademark and trade dress infringement, Kittrich has suffered damage to the EcoSmart trademark, and other damages in an amount to be proved at trial, including Defendants' profits and Kittrich's lost profits.

125.   Kittrich has no adequate remedy at law.  If Defendants' activities are not enjoined, Kittrich will continue to suffer irreparable harm and injury to its goodwill and reputation.

## VIII.   FOURTH CLAIM FOR RELIEF

### (False Designation of Origin, Passing Off, and Unfair Competition Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

126.   Kittrich repeats and re-alleges each of the allegations above as if fully set forth herein.

127.   Defendants' acts of distributing, marketing, and selling their EcoLogic pesticides with packaging that is confusingly similar to the EcoSmart trade dress constitute unfair competition, false designations of origin, and passing off that are likely to cause confusion, mistake, or to deceive as to the source, affiliation, association, or approval of Defendants and/or Defendants' goods, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

128.   Upon information and belief, Defendants' activities as described above have been willful, wanton, and in deliberate disregard of Plaintiff's trademark rights, and for the purpose of intentionally misappropriating and capitalizing on Plaintiff's goodwill.

129.   Defendants' aforementioned acts are exceptional within the meaning of 15 U.S.C. § 1117.

COMPLAINT                                                                    35

130.   As a direct and proximate result of Defendants' acts of unfair competition, false designation of origin, and passing off, Kittrich has suffered damage to the EcoSmart trademark, and other damages in an amount to be proved at trial, including Defendants' profits and Kittrich's lost profits.

131.   Kittrich has no adequate remedy at law.  If Defendants' activities are not enjoined, Kittrich will continue to suffer irreparable harm and injury to its goodwill and reputation.

### IX.   FIFTH CLAIM FOR RELIEF

**(Copyright Infringement Under 17 U.S.C. § 101 *et seq.*)**

132.   Kittrich repeats and re-alleges each of the allegations above as if fully set forth herein.

133.   Kittrich owns valid, enforceable copyrights for the EcoSmart packaging labels, which are the subject of Kittrich's copyright registrations. (Exhibit 3).

134.   Defendants are infringing Kittrich's copyrighted labels by copying and making unauthorized use of the labels' designs or substantially similar designs and/or derivative works, including reproduction and distribution to the public of such labels.

135.   Defendants' activities are in violation of 17 U.S.C. § 101 *et seq.*

136.   Defendants' activities have been willful, knowing, and intentional.

137.   Kittrich has been damaged by Defendants' activities and will continue to sustain irreparable harm, for which there is no adequate remedy at law, unless Defendants' infringing actions are enjoined.

138.   Pursuant to Section 504(b) of the Copyright Act, 17 U.S.C. § 504(b), Kittrich is entitled to recover from Defendants the damages it has

COMPLAINT                                                                              36

1  sustained and will sustain and any profits obtained by Defendants as a result

2  of or attributable to the infringement.

## X.   SIXTH CLAIM FOR RELIEF

### (Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)

6      139.   Kittrich repeats and re-alleges each of the allegations above as

7  if fully set forth herein.

8      140.   Kittrich holds common law trademark rights in the EcoSmart

9  mark and the EcoSmart trade dress.

10      141.   Defendants' use of the EcoLogic mark and the infringing

11  packaging in connection with the distribution, marketing, and sale of

12  Defendants' EcoLogic products is likely to cause confusion, deception, and

13  mistake among consumers, the public, and the trade as to whether

14  Defendants' products originate from, or are endorsed by, Kittrich.

15      142.   Defendants' conduct constitutes unfair competition in violation

16  of Section 17200 of California's Business and Professions Code.

17      143.   Defendants' conduct is causing, and is likely to continue to

18  cause, injury to the public and to Kittrich.

19      144.   Kittrich has no adequate remedy at law.  If Defendants'

20  activities are not enjoined, Kittrich will continue to suffer irreparable harm

21  and injury to its goodwill and reputation.

22      145.   Defendants have been unjustly enriched by their infringing

23  conduct.

## XI.   PRAYER FOR RELIEF

25      WHEREFORE, Kittrich prays for judgment against the Defendants as

26  follows:

27

28

COMPLAINT                                                                                      37

1.     That Defendants and their officers, members, directors, agents, servants, employees, confederates, representatives, and all persons acting in concert or participation with them, be permanently enjoined from:

     a.     Marketing and selling pesticides or other home and garden pest control products in infringing packaging;

     b.     Using the EcoSmart trade dress or any confusingly similar trade dress on or in connection with pesticides or other home and garden pest control products;

     c.     Using the EcoLogic mark on or in connection with pesticides or other home and garden pest control products;

     d.     Using any false designation of origin, or representing or suggesting directly or by implication that Defendants or their products are affiliated with, associated with, authorized by, or otherwise connected to EcoSmart; that Defendants are authorized by Kittrich to use the EcoSmart trade dress or trademarks confusingly similar to the EcoSmart mark; or that Defendants' products originate with Kittrich or are brand variants or line extensions of EcoSmart bio-pesticide products;

     e.     Using any simulation, reproduction, copy, or colorable imitation of the EcoSmart trade dress in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution of any product or service in such a manner as to relate or connect, or tend to relate or connect, such product in any way to Kittrich or any products or services sold, manufactured, sponsored, or approved by or connected with Kittrich;

f.      Engaging in any other activity constituting unfair competition with Kittrich, or constituting infringement of the EcoSmart trademark or the EcoSmart trade dress; and

g.      Instructing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs 1 through 6 above.

2.      That Defendants be required to recall from the trade and all distribution channels any and all products, packaging, advertising, and promotional materials bearing or incorporating the EcoSmart trade dress, the EcoLogic trademark, or any other mark, design, or configuration that is confusingly similar to the EcoSmart trademark or the EcoSmart trade dress, including but not limited to any and all pesticides packaged in infringing packaging, and any advertising and promotional materials depicting the infringing packaging.

3.      That Defendants be required to deliver to the Court for destruction, or show proof of destruction of, any and all products, packaging, advertising, and promotional materials in Defendants' possession or control that use the EcoSmart trade dress, the EcoLogic trademark, or any other mark, design, or configuration that is confusingly similar to the EcoSmart trademark, the EcoSmart trade dress, including but not limited to the infringing packaging, and any advertising and promotional materials depicting the infringing packaging.

4.      That Defendants be required to undertake corrective advertising to remedy the damage and injury to Kittrich caused by Defendants' unlawful infringing of Kittrich's trademarks and trade dress.

5.      That Defendants be directed to file with the Court and serve on Kittrich, within thirty (30) days after entry of a final injunction, a report in

COMPLAINT                                                                                                          39

1  writing under oath setting forth in detail the manner and form in which

2  Defendants have complied with the injunction.

3        6.     That Defendants account for and pay over to Kittrich all profits

4  realized by Defendants as a direct and proximate result of Defendants'

5  unlawful conduct.

6        7.     That Kittrich recover its actual damages.

7        8.     That the Court award enhanced profits and treble damages.

8        9.     That Kittrich be awarded statutory damages.

9        10.    That Kittrich be awarded punitive damages to deter any future

10  violations of Kittrich's rights.

11        11.    That Kittrich be awarded interest, including pre-judgment and

12  post-judgment interest, on the foregoing sums.

13        12.    That the Court deem this to be an exceptional case, and that the

14  Court order Defendants to pay Kittrich the costs of this action and Kittrich's

15  reasonable attorneys' fees and expenses under 15 U.S.C. §§ 1116 and 1117.

16        13.    That the Court direct such other actions as the Court may deem

17  just and proper prevent the public from deriving the mistaken impression

18  that any products or services offered, advertised, or promoted by or on

19  behalf of Defendants are authorized by Kittrich or related in any way to

20  Kittrich's products or services.

21        14.    That Kittrich has such other and further relief as the Court may

22  deem just and proper.

23                **XII.    JURY DEMAND**

24        Plaintiff requests a jury trial.

25

26

27

28

DATED:  August 22, 2017        Respectfully Submitted,


                               By:   /s/ Jeffrey T. Lindgren_____
                                     Jeffrey T. Lindgren
                                     Attorneys for Plaintiff Kittrich Corp.

                               Jeffrey T. Lindgren
                               Christopher L. Larson
                               VASQUEZ BENISEK & LINDGREN LLP
                               3685 Mt. Diablo Boulevard, Suite 300
                               Lafayette, CA 94549
                               925-627-4250
                               925-403-0900-Fax
                               jlindgren@vbllaw.com
                               clarson@vbllaw.com


                               Melise R. Blakeslee (*pro hac vice* application to
                               be submitted)
                               Eric Holmes (*pro hac vice* application to be
                               submitted)
                               SEQUEL TECHNOLOGY & IP LAW, PLLC
                               1800 Diagonal Road
                               Suite 600
                               Alexandria, VA 22314
                               Tel: 703.647.6007
                               Fax: 703.647.6009
                               melise@sequeltechlaw.com
                               eric@sequeltechlaw.com

                               Willem F. Gadiano (*pro hac vice* application to
                               be submitted)
                               NEVRIVY PATENT LAW GROUP PLLC
                               1000 Potomac Street, NW
                               Suite 200
                               Washington, DC  20007
                               Tel: 202.650.6906
                               Fax: 202.965.1729
                               wgadiano@nevrivylaw.com

COMPLAINT                                                          41