O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KITTRICH CORPORATION, a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED INDUSTRIES CORPORATION, a Delaware corporation; LIQUID FENCE COMPANY, a Delaware corporation; SPECTRUM BRANDS HOLDINGS,INC., a Delaware ,<br><br>　　　　　Defendants. | Case No. CV 17-06211 DDP (PLAx)<br><br>**ORDER RE: MOTION TO TRANSFER, OR IN THE ALTERNATIVE, DISMISS**<br><br>[Dkt. 24] |

　　Presently before the court is Defendants' Motion to Transfer or in the Alternative, Dismiss. (Dkt. 24.) Having considered the submissions of the parties and heard oral argument, the court denies the motion to transfer, grants the motion to dismiss, in part, denies the motion to dismiss, in part, and adopts the following Order.

I.　Background

　　Plaintiff Kittrich Corporation produces, manufactures, and sells EcoSmart pesticides. (Complaint ¶21.) Plaintiff's pesticide products use packaging elements including a white container with green cap, an image superimposed on a green background on part of the packaging, certain safety-related text, images of insects, and the brand name "EcoSmart" displayed with the prefix in light green and the word "smart" in a different color. (Id. ¶ 41.) Plaintiff

is incorporated in and primarily operates in California. (Compl. ¶21.)

Defendants United Industries Corporation, Liquid Fence Company, and Spectrum Brand Holdings (collectively "Defendants") produce, manufacture, and distribute EcoLogic pesticide products. (Compl. at ¶¶ 22, 23, and 25.) Defendants allegedly changed the packaging of their pesticide products to more closely approximate the look of Plaintiff's product packaging. (Id. ¶ 57.) Defendants United Industries Corporation and Liquid Fence Company have principal places of business in Missouri. (Id. ¶ 22.) Defendant Spectrum Brands Holdings, Inc. has a principal place of business in Wisconsin. (Id. ¶ 24.)

In May 2017, Plaintiff filed suit against Defendants in the Eastern District of Virginia for, among other things, trademark infringement and unfair competition under Virginia law. (Declaration Jessica Mendez, Ex. A at 4.) Defendants filed a motion to transfer to the Eastern District of Missouri. (Mendez Decl., Ex. B.) The Virginia court granted Defendants' motion and ordered the transfer. (Dec. Mendez, Ex. F.) Plaintiff subsequently voluntarily dismissed the complaint.[1] (Dec. Mendez, Ex. G.)

On August 22, 2017, the same day Plaintiff voluntarily dismissed its complaint in the Virginia case, Plaintiff filed this complaint alleging copyright infringement, trade dress infringement, trademark infringement, and unfair competition under California State law.

---

[1] Plaintiff notes that the day following the voluntary dismissal, Defendants filed a Declaratory Judgment action in the Eastern District of Missouri. Plaintiff filed a motion to dismiss on September 15, 2017. (Opposition to Motion to Transfer at 5:14-16.)

Defendants now move to transfer this case to the Eastern District of Missouri or, in the alternative, dismiss.

**II. Legal Standard**

A court may transfer a case "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C § 1404(a). A court has discretion to transfer based on an individualized analysis of "convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).

Transfer is appropriate when the moving party shows: (1) venue is proper in the transferor district court; (2) the transferee district court has personal jurisdiction over the defendants and subject matter jurisdiction over the claims; and (3) transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice. Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F.Supp. 503, 506 (C.D.Cal. 1992).

A court ruling on a motion to transfer must balance the convenience of parties and witnesses and the interests of justice. 28 U.S.C. § 1404(a). The court may also consider the following factors: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of

unwilling non-party witnesses, and (8) the ease of access to sources of proof. Jones, 211 F.3d at 498-99 (9th Cir. 2000). The burden is on the moving party to establish that convenience and the interest of justice requires the case to be transferred. Allstar Marketing Grp, LLC v. Your Store Online, LLC, 666 F.Supp.2d 1109, 1131(C.D. Cal. 2009).

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their

4

claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III.    Discussion**

   A.  Motion to Transfer

Defendants ask that the court transfer this action to the Eastern District of Missouri.  There is no dispute that this matter could have been brought in that district or that there is any jurisdictional barrier to transfer.  See 28 U.S.C. § 1404(a); 29 U.S.C. § 1132(e)(2). The only remaining question, therefore, is the balance of the convenience of the parties and the interest of justice.

"Plaintiff's choice of venue is generally accorded deference." Allstar, 666 F.Supp.2d at 1131 (C.D. Cal. 2009).  In order for the court to disrupt the plaintiff's choice of forum, the "defendant must make a strong showing of inconvenience." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

Plaintiff has chosen to file the present Complaint in the Central District of California, its home forum.  However, Defendants contend that because Plaintiff previously filed in Virginia, the Central District of California is actually Plaintiff's second choice of forum.  Some courts in this circuit have, under similar circumstances, afforded a plaintiff's choice of forum less deference than would otherwise apply.  See, e.g., Kawamoto v. CB Richard Ellis, Inc., 225 F. Supp. 2d 1209, 1216 (D. Haw. 2002) ("The plaintiff's 'second choice' of forum is not

5

automatically entitled to the same amount of deference [as plaintiff's first choice of forum.]").  Like those courts, this court affords Plaintiff's choice of forum some, albeit less, deference in light of Plaintiff's initial attempt to litigate this matter in Virginia.

Defendants argue that transfer is appropriate because the EcoLogic products at issue are primarily made in Missouri, not in California. (Motion to Transfer at 4.) Defendants further contend that because the products were developed and the packaging was designed in Missouri, any relevant evidence is located in Missouri. (Mot. at 4.) Defendants note in particular that two non-party witnesses "who worked on the EcoLogic rebranding and subsequent sales" reside in St. Louis, Missouri. (Mot. at 11.)

Although Defendants' packaging may have been designed in Missouri and Defendants' allegedly infringing labels may have been affixed there, "[i]n a trademark infringement action, a substantial part of the events occur both where the labels are affixed and where confusion of purchasers is likely to occur." Kaia Foods, Inc. v. Bellafoire, 70 F. Supp.3d 1178, 1184 (N.D. Cal. 2014).  Most of EcoLogic's sales occur in California, not Missouri. (Dec. Mendez, Ex. E at 7:18-19; Declaration of Mark Calkins, ¶ 6.)  Thus, the majority of the alleged consumer confusion likely occurred in California.  Furthermore, Plaintiff has identified several witnesses, including one non-party witness, that are located in California.[2]  (Calkins Decl., ¶ 2.)

---

[2] Plaintiff also identifies several witnesses located in Georgia.

6

Transfer is not appropriate when it would merely shift inconvenience from one party to another. See <u>Orange Cty. IBEW-NECA Labor Mgmt. Cooperation Comm. v. Pro Tech Eng'g Corp.</u>, No. 14-CV-04225-LHK, 2015 WL 5591113, at *4 (N.D. Cal. Sept. 23, 2015). Although Defendants have identified witnesses in Missouri, transferring this case would simply shift any inconvenience from Defendants to Plaintiff. Nor is the court persuaded that because Defendants' evidence is located within one district as opposed to Plaintiff's evidence being in various districts, transfer to Missouri would necessarily lower litigation costs or otherwise significantly facilitate access to evidence. To the extent Defendants refer to records and other documentary evidence, they "must show with particularity the location, difficulty of transportation, and the importance of such records." <u>Bohara v. Backus Hosp. Med. Benefit Plan</u>, 390 F.Supp.2d 957, 963 (C.D. Cal. 2009). Defendants have made no such showing, and it appears likely to the court that any such evidence to which Defendants refer is amendable to electronic, and relatively low-cost, transmission.[3]

In sum, Defendants fail to make strong enough showing of inconvenience to warrant disturbing the Plaintiff's choice of home forum, notwithstanding the fact that Plaintiff first attempted to litigate this matter elsewhere. Because the balance of the relevant factor weighs against transfer, Defendants' motion to transfer is denied.

---

[3] Although Defendants argue that Plaintiff previously represented that some documents exist only in paper format, those documents appear to be located in Georgia. To the extent such evidence cannot be transmitted electronically, delivery costs to California appear unlikely to significantly exceed the cost of delivery to Missouri.

7

B. Copyright Infringement Claims

Defendant's motion seeks, in the alternative to transfer, dismissal of Plaintiff's claims, including Plaintiff's claims for copyright infringement. A copyright infringement claim must adequately allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). To satisfy the copying prong, a copyright plaintiff must also allege that the works are substantially similar in their protected elements. Wild v. NBC Universal, Inc., 788 F.Supp.2d 1083, 1098 (C.D. Cal. 2011). To determine whether works are substantially similar, courts in this circuit apply a two-part analysis comprised of an objective "extrinsic test" and a subjective "intrinsic" test. Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002). The intrinsic test is left to the jury. Id. at 484.

In conducting the extrinsic test, courts must make an objective comparison of specific expressive elements. Cavalier, 297 F.3d at 822. Such a comparison may require an "analytical dissection" of a particular work. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000). It is the plaintiff's burden to initially identify specific, objective elements. Three Boys, 212 F.3d at 485. The court's analytical dissection must, however, distinguish between protected and unprotected elements in the work, and "must filter out and disregard the non-protectible elements in making its substantial similarity determination." Cavalier, 297 F.3d at 815; Swirsky v. Carey, 376 F.3d 841, 845 (9th

8

Cir. 2004). For example, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003); see also Swirsky, 376 F.3d at 850 ("[W]hen certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are . . . not protected by copyright."). Even unprotectable elements, however, may gain some protection in combination with each other. Specific combinations of unprotectable elements may be copyrightable, provided that the elements combined "are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." Satava, 323 F.3d at 811.

Here, Defendants assert that Plaintiff's copyright claim must be dismissed because Plaintiff has not identified any copyrightable elements. Plaintiff does not appear to dispute this contention, arguing instead that it claims protection for "elements as a whole." (Opposition at 13:17.) Although Plaintiff is correct that an original combination of unprotectable elements may be copyrightable, neither Plaintiff's Complaint nor Opposition to the instant motion specify which elements of Plaintiff's various labels combine to constitute a protectable original work. See Satava, 323 F.3d at 811. Rather than identify any such combination, Plaintiff argues that the question of substantial similarity is inappropriate for resolution on a motion to dismiss. (Opp. at 15.) Indeed, in some cases, everyday experience may not suffice to provide a court with the necessary background to perform the extrinsic test of

9

substantial similarity.  See, e.g. Acmet, Inc. v. Stage Stores, Inc., No. CV 15-4666-GHK, 2015 WL 12552063 at *3 (C.D. Cal. Sept. 17, 2015) (declining to analyze the constituent elements of a textile design including lines, chevrons, and geometric shapes). Where, however, "the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." Christianson v. W. Pub. Co., 149 F.2d 202, 203 (9th Cir. 1945); see also Gilbert v. New Lines Productions, Inc., No. CV 09-02231 RGK, 2010 WL 891333 at *2 (C.D. Cal. Feb. 17, 2010); Capcom Co., Ltd., v. MKR Group, Inc., No. C 08-0904 RS, 2008 WL 4661479 at *4-5 (N.D. Cal. Oct. 20, 2008).

Here, the court is satisfied that the text, colors, and images present on Plaintiff's labels are sufficiently ordinary to render this court capable of performing the extrinsic test without the assistance of expert testimony.  At first glance, the court is inclined to agree with Defendants that the labels "as a whole" are not substantially similar, as they bear different images and different text of differing typefaces and sizes.  See Satava, 323 F.3d at 812 (applying only "thin" protection against "virtually identical copying" of "elements of expression that nature displays for all observers.")  As discussed above, however, the Complaint does not identify, beyond a pictorial depiction of the parties' respective labels, what particular combination of unprotectable elements Plaintiff alleges to be original or copied.  Plaintiff's copyright claim is, therefore, dismissed, with leave to amend.

   C. Trademark Infringement

10

To establish a claim for trademark infringement, Plaintiff must demonstrate (1) an ownership interest in a mark and (2) that the defendant's use of the mark is likely to cause consumer confusion. Dep't of Parks and Recreation v. Bazaar Del Mundo, Inc., 448 F.3d 1118, 1124 (9th Cir. 2006). "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1053 (9th Cir. 1999). Likelihood of confusion may turn on the similarity of the marks, relatedness of the parties' products, the strength of the mark, marketing channels used, the degree of care consumers are likely to use in purchasing goods, the defendants' intent in selecting its mark, evidence of actual confusion, and likelihood of expansion in product lines (the "Sleekcraft factors"). Id. at 1053-54

Defendants focus on the first of these factors, contending that their EcoLogic mark is too different from Plaintiff's EcoSmart mark to cause consumer confusion. "Where the two marks are entirely dissimilar, there is no likelihood of confusion." Brookfield, 174 F.3d at 1054. The marks must be considered in their entirety, as they appear in the marketplace. Id.; but see A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 216 (3d Cir. 2000) ("[T]he general rule that marks should be viewed in their entirety does not undermine the common-sense precept that the more forceful and distinctive aspects of a mark should be given more weight, and the other aspects less weight."). Defendants contend, and Plaintiff does not appear to dispute, that

11

the prefix "Eco" is descriptive in nature.  Defendants, however, appear to suggest that this Court can therefore ignore the descriptive prefix and consider the words "logic" and "smart," which are entirely dissimilar.  Plaintiff's argument is misplaced. The descriptiveness of the "Eco" prefix, and thus of the mark in its entirety, is not pertinent to the similarity of the marks, but rather to the overall validity of Plaintiff's mark or to the strength of Plaintiff's protectable mark.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768-69 (1992); Rebelution, LLC v. Perez, 732 F. Supp. 2d 883, 890-91 (N.D. Cal. 2010).  Descriptive or not, this Court cannot agree with Defendants that the two marks, in their entirety, are "entirely dissimilar."[4]  (Reply at 22:4.) Accordingly, Defendants' motion is denied with respect to Plaintiff's trademark claims.

    D.   Trade Dress

        1.   Functionality

Defendants also seek to dismiss Plaintiff's trade dress claims because, Defendants argue, the trade dress alleged is functional. Trade dress is the "total image of a product, including features such as size, shape, color, texture, and graphics[.]" Millennium Labs., Inc. v. Ameritox, Ltd., 817 F.3d 1123, 1126 (9th Cir. 2016) (internal quotation and citations omitted).  A plaintiff bringing a trade dress claim must allege "(1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role[,] either because it is inherently

---

[4] Defendants' Motion does not raise any argument regarding any other Sleekcraft factor.

12

distinctive or has acquired secondary meaning; and (3) that the defendant's product . . . creates a likelihood of consumer confusion." Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1258 (9th Cir. 2001).

Although Defendants' primary contention is that Plaintiff's trade dress is functional, the bulk of their argument appears to be that Plaintiff's trade dress is generic. (Motion at 22-23.) A functional feature is a feature essential to the use of a product or that affects the cost or quality of a product, the exclusive use of which feature would put competitors at a significant disadvantage. Millenium Labs., 817 F.3d at 1127-28. Genericness, however, is not a question of functionality, but rather of source-identification. See, e.g., Classic Foods Int'l Corp. v. Kettle Foods, Inc., 468 F. Supp. 2d 1181, 1188 (C.D. Cal. 2007). Defendants argue that elements such as a colored cap, descriptive text, and a colored background "informs consumers and helps them quickly identify the most suitable pesticide." (Mot. at 23:14-15.) Thus, Defendants contend, to preclude them from using these generic elements in their product labeling "would . . . reduce the overall quality of the products." (Id. at 23:17-18.) Defendants' leap of logic is difficult to follow, as there does not appear to be any relationship between the elements depicted on any party's pesticide bottles and the nature or quality of the products therein.[5]

---

[5] This Court takes no position on whether the elements of either party's labels are generic, either singly or in combination. Defendants' Reply continues to conflate genericness with functionality, albeit less so than Defendants' Motion. (Reply at 22-23.) The court does not, therefore, fault Plaintiff for focusing on functionality rather than genericness in its Opposition.

13

### 2. Secondary Meaning

Defendants also raise a separate argument that Plaintiff has not adequately alleged that its EcoSmart trade dress is inherently distinctive or has acquired secondary meaning. (Mot. at 24.) Secondary meaning is the "mental association by a substantial segment of consumers and potential customers between the alleged trade dress and a single source of the product." Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985) (en banc) (internal quotations omitted). Secondary meaning can be established through direct evidence such as consumer surveys and testimony or circumstantially through "exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." Filipino Yellow Pages, Inc. v. Asian Journal Publ'n, Inc., 198 F.3d 1143, 1151 (9th Cir. 1999).

The court agrees with Defendants that Plaintiff's allegations regarding distinctiveness and secondary meaning are conclusory. Plaintiff alleges that its trade dress "creates a distinct commercial impression associated with the EcoSmart Brand", that EcoSMart packaging "has become so associated with the brand that it communicates the same features as the EcoSmart brand name itself," that "the trade dress is distinctive in the markset (sic) for bio-pesticides," and that the trade dress "is distinctive . . . and has become associated with high quality bio-pesticides from a single source . . . [and] has acquired secondary meaning by virtue of the widespread distribution of EcoSmart insecticide produts . . . and

14

the extensive commercial sales of EcoSmart bio-pesticide products . . . ." (Complaint ¶¶ 42-44. 111.)  Plaintiff alleges no concrete facts, however, to support any of these assertions.  The same is true of Plaintiff's allegation that "Defendants have willfully and intentionally mimicked the EcoSmart trade dress."  (Compl. ¶ 17.)  See Cont. Lav. Products, Inc. v. Medax Int'l, Inc., 114 F.Supp.2d 992, 1010 (S.D. Cal. 2000) ("[I]ntentional copying supports a finding of secondary meaning only where the defendant intended to confuse consumers and pass off its product as the plaintiff's.").  Plaintiff's naked assertions regarding distinctiveness and secondary meaning cannot sustain a claim of trade dress infringement.  Accordingly, Plaintiff's trade dress claims are dismissed, with leave to amend.

**IV. Conclusion**

For the reasons stated above Defendants' Motion to Transfer is DENIED. Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. The motion is DENIED with respect to Plaintiff's trademark claims. The motion is GRANTED with respect to Plaintiff's copyright claims and trade dress claims. Those claims are DISMISSED, with leave to amend. Any amended complaint shall be filed within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: October 18, 2017

DEAN D. PREGERSON
United States District Judge