O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KITTRICH CORPORATION, a California corporation, | ) ) ) | Case No. CV 17-06211 DDP (PLAx) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED INDUSTRIES CORPORATION, a Delaware corporation; LIQUID FENCE COMPANY, a Delaware corporation; SPECTRUM BRANDS HOLDINGS,INC., a Delaware , | ) ) ) ) ) | **ORDER RE: DEFENDANTS' MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT** |
| | | [Dkt. 59] |
| Defendants. | | |

Presently before the court is Defendants' Motion to Dismiss Counts II, III, IV, V, and VI of Plaintiff's First Amended Complaint ("FAC"). Having considered the submissions of the parties and heard oral argument, the court grants the motion in part, denies the motion in part, and adopts the following Order.

**I.   Background**

Plaintiff Kittrich Corporation produces, manufactures, and sells EcoSmart bio-pesticides, which are not toxic to humans or pets. (FAC ¶ 13.) Kittrich alleges that it owns several trademarks

1 and copyrights, as well as unique trade dress, related to its

2 EcoSmart bio-pesticide products.   (FAC ¶¶ 24, 26, 42-46.)

3     Defendants United Industries Corporation, Liquid Fence

4 Company, and Spectrum Brand Holdings (collectively "Defendants")

5 produce, manufacture, and distribute EcoLogic pesticide products.

6 (FAC ¶¶ 65-70.)  Defendants allegedly changed the packaging of

7 their pesticide products to more closely approximate the look of

8 Plaintiff's product packaging.  (Id. ¶¶ 51-55.)  Plaintiff's FAC

9 alleges causes of action against Defendants for trademark and trade

10 dress infringement, copyright infringement, reverse confusion,

11 passing off, and unfair competition under both federal and state

12 law.  Defendants now move to dismiss Plaintiff's copyright and

13 trade dress claims.

14 **II.  Legal Standard**

15     A complaint will survive a motion to dismiss when it contains

16 "sufficient factual matter, accepted as true, to state a claim to

17 relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

18 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

19 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must

20 "accept as true all allegations of material fact and must construe

21 those facts in the light most favorable to the plaintiff." Resnick

22 v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint

23 need not include "detailed factual allegations," it must offer

24 "more than an unadorned, the-defendant-unlawfully-harmed-me

25 accusation." Iqbal, 556 U.S. at 678.  Conclusory allegations or

26 allegations that are no more than a statement of a legal conclusion

27 "are not entitled to the assumption of truth." Id. at 679.  In

28 other words, a pleading that merely offers "labels and

1   conclusions," a "formulaic recitation of the elements," or "naked
2   assertions" will not be sufficient to state a claim upon which
3   relief can be granted.   Id. at 678 (citations and internal
4   quotation marks omitted).

5        "When there are well-pleaded factual allegations, a court
6   should assume their veracity and then determine whether they
7   plausibly give rise to an entitlement of relief." Id. at 679.
8   Plaintiffs must allege "plausible grounds to infer" that their
9   claims rise "above the speculative level." Twombly, 550 U.S. at
10  555. "Determining whether a complaint states a plausible claim for
11  relief" is a "context-specific task that requires the reviewing
12  court to draw on its judicial experience and common sense."  Iqbal,
13  556 U.S. at 679.

14       **III. Discussion**

15            A.    Copyright Claims

16            A copyright infringement claim must adequately allege
17  "(1) ownership of a valid copyright, and (2) copying of constituent
18  elements of the work that are original." Feist Pubs., Inc. v.
19  Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). "Any
20  copyrighted expression must be original.  Although the amount of
21  creative input by the author required to meet the originality
22  standard is low, it is not negligible.  There must be something
23  more than a merely trivial variation, something recognizably the
24  artist's own." Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003)
25  (internal quotations and citations omitted).  Furthermore, to
26  satisfy the copying prong, a plaintiff must allege that the works
27  are substantially similar in their protected elements.  Wild v. NBC
28  Universal, Inc., 788 F.Supp.2d 1083, 1098 (C.D. Cal. 2011).

3

i.   Originality

Defendants argue that Plaintiff's FAC fails to identify any elements or combination of elements that are protectable by copyright.  The court agrees.  Notwithstanding this court's earlier observation that Plaintiff's Complaint did not identify any particular elements, or combination of elements, alleged to be original, the FAC remains vague in that regard.  The FAC alleges that "protectable elements of EcoSmart bio-pesticide product labels" include such elements as "illustrations of insects highlighted by encircling the illustration within a frame or border," "colors of green for the circular frame or border . . . .," and "encircled insect illustration on the right side of the label . . . ."[1]  (FAC ¶ 48.)  However, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law."  Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003); see also Swirsky, 376 F.3d at 850 ("[W]hen certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are . . . not protected by copyright.").  The FAC does not explicitly allege, nor can Plaintiff credibly argue, that any one of these elements individually exhibits the requisite amount of creativity and originality necessary to merit copyright protection.

The FAC does allege, however, that Plaintiff's labels "include artistic graphical choices that are original and create a unified work that possesses more than a modicum of creativity[,]" and that "the overall look and feel of Defendants' directly competing

_____
[1] As Defendants point out, the circular frame or border to which the FAC refers is the universal "no" or prohibition symbol, comprised of a circle with a diagonal line through it.

4

1   product labels is substantially similar to the EcoSmart

2   Copyrights." (FAC ¶¶ 47, 49.)  Giving Plaintiff the benefit of the

3   doubt, the FAC could be read to allege that the elements described,

4   even if not protectable individually, are protectable in

5   combination with each other.

6           Combinations of unprotectable elements may merit some

7   copyright protection.  <u>Satava</u>, 323 F.3d at 811.  Specific

8   combinations of unprotectable elements may be copyrightable,

9   provided that the elements combined "are numerous enough and their

10  selection and arrangement original enough that their combination

11  constitutes an original work of authorship." <u>Id.</u>; <u>see also Lamps</u>

12  <u>Plus, Inc. v. Seattle Lighting Fixture Co.</u>, 345 F.3d 1140, 1147

13  (9th Cir. 2003).  Here, in addition to the framed illustration of

14  insects on the right side of the label, described above, the FAC

15  identifies two additional elements: "color-blocking consisting of

16  the top approximate one-third of the label having a banner or

17  background that is predominantly green with the remaining

18  approximate two-thirds of the label have (sic) a background that is

19  white[,]" and "shades of green to visually occupy the same spaces

20  on the label; for example . . . in the left of the middle third of

21  the labels in close proximity to the large green color block on the

22  top approximate one-third of the label." (FAC ¶ 48.)  This

23  combination of elements is only eligible for copyright protection

24  if "the selection, coordination, and arrangement" of those elements

25  is "sufficiently original." <u>Feist</u>, 323 F.3d at 358.

26          The court concludes that the five-element combination

27  alleged here is not original. The use of an image of insects in

28  conjunction with a pesticide, the universal "no" symbol, and the

1    colors green and white in conjunction with a non-toxic,

2    ecologically friendly product is in no way novel.  See Salt Optics,

3    Inc. v. Jand, Inc., No. SACV 10-828 DOC, 2011 WL 13055856 at *5

4    (C.D. Cal. Mar. 4, 2011) ("Although certain combinations of

5    unprotectable elements may qualify for copyright protection . . .,

6    'commonplace' or 'typical' combinations do not."); see also Aurora

7    World, Inc. v. Ty Inc., No. CV 09-08463, 2011 WL 13176413 at *17

8    (C.D. Cal. Mar. 14, 2011).  Although the use of the color green for

9    the no symbol and the proportions of color used in Plaintiff's

10   label arguably exhibit some degree of creativity, the "quantum of

11   originality" involved in those creative choices is no more than

12   trivial.[2]  See, e.g., Satava, 323 F.3d at 811-12 (finding

13   combination of six elements, including bright colors, proportion,

14   and vertical orientation, insufficiently original to merit

15   copyright protection of a sculpture).

16                    ii.  Substantial Similarity

17        To determine whether works are substantially similar, courts

18   in this circuit apply a two-part analysis comprised of an objective

19   "extrinsic test" and a subjective "intrinsic" test.  Cavalier v.

20   Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002).  The

21   intrinsic test is left to the jury.  Id. at 484.

22        In conducting the extrinsic test, courts must make an

23   objective comparison of specific expressive elements.  Cavalier,

24   297 F.3d at 822.  Such a comparison may require an "analytical

25   dissection" of a particular work.  Three Boys Music Corp. v.

26   ────────────────────────────
27        [2] Even if Plaintiff's choices regarding color and proportion
     were sufficient to confer some copyright protection, it would be
     only "thin" protection against "only virtually identical copying."
28   Satava, 323 F.3d at 812.  As discussed further below, Plaintiff's
     allegations do not meet this standard.

                                   6

1 Bolton, 212 F.3d 477, 485 (9th Cir. 2000).  It is the plaintiff's

2 burden to initially identify specific, objective elements.  Three

3 Boys, 212 F.3d at 485.  The court's analytical dissection must,

4 however, distinguish between protected and unprotected elements in

5 the work, and "must filter out and disregard the non-protectible

6 elements in making its substantial similarity determination."

7 Cavalier, 297 F.3d at 815; Swirsky v. Carey, 376 F.3d 841, 845 (9th

8 Cir. 2004).

9      Combinations of unprotectable elements, as discussed above,

10 may be protectable under the extrinsic test.  Three Boys, 212 F.3d

11 at 485 (9th Cir. 2000); see also Cisco Sys. Inc. v. Arista

12 Networks, Inc., No. 14-cv-05344-BLF, 2017 WL 4771009 at *8 (N.D.

13 Cal. May 10, 2017); Williams v. Bridgeport Music, Inc., No. CV 13-

14 6004 JAK, 2015 WL 4479500 at *21 (C.D. Cal. Jul. 14, 2015).  As

15 discussed above, however, Plaintiff has not identified any

16 protectable elements or an original, protectable combination of

17 unprotectable elements.  Even if Plaintiff's particular arrangement

18 of elements, such as the placement of a picture of insects on the

19 right side of the label and the use of the color green in the top

20 portion of the label, were sufficiently original to merit some

21 copyright protection, it would be entitled only to "thin"

22 protection.  See, e.g. Idema v. Dreamworks, Inc., 162 F.Supp.2d

23 1129, 1178 (C.D. Cal. 2001) ("Where a copyrighted work is composed

24 largely of unprotectable elements, or elements limited by merger,

25 scenes a faire, and/or other limiting doctrines, it receives a

26 'thin' rather than a 'broad' scope of protection.") (internal

27 quotation marks omitted).

28

7

1    Thin copyright "protects against only virtually identical

2    copying."  Satava, 323 F.3d at 812.  Thus, even assuming that

3    Plaintiff had adequately alleged a protectable combination of

4    unprotectable elements on its pesticide labels, it must also allege

5    that Defendants' labels are virtually identical.  The copying

6    alleged in the FAC does not meet that high standard.  Defendants'

7    labels display a picture of insects within a different frame or

8    border, which is itself displayed lower on the bottle and further

9    to the right than Plaintiffs' displays.  Although both bottles use

10   a shade of green toward the top of the label and white on the

11   remainder, Defendants' green color block uses different shades and

12   shapes than Plaintiffs' labels.  Although the shade of green used

13   for the word "Eco" in the two labels is very similar, the word

14   appears in different locations, fonts, orientations, and relative

15   sizes on the parties' respective labels.  The combinations of

16   elements, therefore, even if protectable, are not "virtually

17   identical," and are not substantially similar.

18        Plaintiff's copyright claims are, therefore, DISMISSED,

19   with prejudice.

20        B.   Trade Dress

21      Trade dress is the "total image of a product, including

22   features such as size, shape, color, texture, and graphics[.]"

23   Millennium Labs., Inc. v. Ameritox, Ltd., 817 F.3d 1123, 1126 (9th

24   Cir. 2016) (internal quotation and citations omitted).  A plaintiff

25   bringing a trade dress claim must allege "(1) that its claimed

26   dress is nonfunctional; (2) that its claimed dress serves a

27   source-identifying role[,] either because it is inherently

28   distinctive or has acquired secondary meaning; and (3) that the

1   defendant's product . . . creates a likelihood of consumer

2   confusion." Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d

3   1252, 1258 (9th Cir. 2001).  Defendants contend that the FAC fails

4   to adequate allege that Plaintiff's trade dress serves a source-

5   identifying role.

6                      i.   Inherent Distinctiveness

7       The FAC alleges that Plaintiff's packing design "create[s] a

8   distinctive commercial impression," "is used to convey the

9   distinctive appearance of the EcoSmart bio-pesticide products as

10  compared to other bio-pesticide products," and "is inherently

11  distinctive."  (FAC ¶¶ 27-28, 30.)  Defendants argue first that

12  these allegations are conclusory, and that Plaintiff has not

13  alleged any facts to support its allegation that the EcoSmart trade

14  dress is inherently distinctive.

15          Trade dress is inherently distinctive if its "intrinsic

16  nature serves to identify a particular source of a product." Two

17  Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992).  "The

18  predominant test for inherent distinctiveness asks whether (1) the

19  design or shape is a common, basic shape or design; (2) it was

20  unique or unusual in a particular field; and (3) it was a mere

21  refinement of a commonly-adopted and well-known form of

22  ornamentation for a particular class of goods . . . ." Mattel,

23  Inc. v. MGA Entm't, Inc., 782 F. Supp. 2d 911, 1004 (C.D. Cal.

24  2011) (internal quotations omitted).  Some courts have concluded

25  that a determination regarding distinctiveness is a question of

26  fact. See, e.g., Zobmondo Entm't, LLC v. Falls Media, LLC, 602

27  F.3d 1108, 1113 (9th Cir. 2010).  As other courts have observed,

28  however, a plaintiff "must plead with specificity how the [alleged

                                    9

1    trade dress is] unique and inherently distinctive." AccuImage

2    Diagnostics Corp v. Terarecon, Inc., 260 F. Supp. 2d 941, 949 (N.D.

3    Cal. 2003) (emphasis added); see also Globefill, Inc. v. Elements

4    Spirit, Inc., No. CV 10-2034 CBM, 2010 WL 11458631 at *7 (C.D. Cal.

5    June 22, 2010) (dismissing trade dress claim for failure to allege

6    "how or why" trade dress was distinctive).

7            Defendants' primary contention is that the facts

8    regarding Plaintiff's trade dress are irrelevant to the issue of

9    distinctiveness, and that all allegations pertaining to that issue

10   are conclusory.  (Reply at 7:4.)  Defendants' argument has some

11   merit.  The FAC alleges in one place, for example, without

12   elaboration, that "the EcoSmart trade dress is inherently

13   distinctive."  (FAC ¶ 30.)  Other, more detailed portions of the

14   FAC appear to conflate distinctiveness and functionality.  See,

15   e.g., FAC ¶ 26 ("This packaging trade dress is comprised of various

16   non-functional elements that create a distinctive appearance.").

17   Read as a whole, however, the FAC adequately identifies the

18   elements of Plaintiffs' claimed trade dress and alleges that those

19   elements are unique in the market for bio-pesticides.  The FAC

20   identifies trade dress comprised of:

21           a white container with a green cap (for liquid and
         aerosol products), an image superimposed on a green
22       plantlike background covering the top portion of the
         packaging, the text "SAFE Around Children & Pets" in white
23       contained in a solid colored background on the upper
         portion of the packaging, the brand name EcoSmart displayed
24       across the packaging with the prefix "Eco" in light green
         text and the suffix "Smart" in a contrasting color, the
25       name of the particular product below the top image, and an
         image of an insect in the lower right portion of the
26       packaging, combined with the packaging color palette, which
         includes the unique color-blocking of the packaging and use
27       of color in elements of the label . . . .

28

1    FAC ¶ 27.   The FAC further alleges that "[o]f the many bio-

2  pesticide products that compete directly with EcoSmart bio-

3  pesticide products,      . none use the combination of design

4  elements that constitute the EcoSmart trade dress."   (FAC ¶ 29.)

5  Although the veracity of these allegations remains to be seen, at

6  the pleading stage, Plaintiff has adequately alleged that its

7  design is unique in the field of bio-pesticides.  See Mattel, 782

8  F. Supp. 2d at 1004.

9                  ii.   Secondary Meaning

10

11

12    Defendants also argue that Plaintiff has not adequately

13  alleged that its EcoSmart trade dress has acquired secondary

14  meaning.   (Mot. at 9.)   Secondary meaning is the "mental

15  association by a substantial segment of consumers and potential

16  customers between the alleged trade dress and a single source of

17  the product."  Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d

18  1352, 1354 (9th Cir. 1985) (en banc) (internal quotations omitted).

19  Secondary meaning can be established through direct evidence such

20  as consumer surveys and testimony or circumstantially through

21  "exclusivity, manner, and length of use of a mark; amount and

22  manner of advertising; amount of sales and number of customers;

23  established place in the market; and proof of intentional copying

24  by the defendant."  Filipino Yellow Pages, Inc. v. Asian Journal

25  Publ'n, Inc., 198 F.3d 1143, 1151 (9th Cir. 1999).

26    As with Plaintiff's allegations regarding inherent

27  distinctiveness, the FAC does contain conclusory, unsupported

28  allegations, such as that the "EcoSmart trade dress . . . indicates

                                  11

1  that such products emanate from a single source, the Plaintiff,"

2  and "the public has come to look for bio-pesticide products bearing

3  the EcoSmart trade dress from Kittrich." (FAC ¶¶ 34, 38.) The

4  same is true of Plaintiff's allegation that "Defendants willfully

5  changed the EcoLogic packaging to substantially mimic the overall

6  commercial impression of the EcoSmart brand and its distinctive

7  trade dress." (FAC ¶ 53.) See Cont. Lav. Products, Inc. v. Medax

8  Int'l, Inc., 114 F.Supp.2d 992, 1010 (S.D. Cal. 2000)

9  ("[I]ntentional copying supports a finding of secondary meaning

10  only where the defendant intended to confuse consumers and pass off

11  its product as the plaintiff's.").

12      Nevertheless, the FAC does include factual allegations

13  regarding the indicia of secondary meaning. The FAC, unlike Plaintiff's

14  original Complaint, alleges that Plaintiff sells EcoSmart products

15  at well over a dozen specifically-named major retailers, and that

16  Plaintiff has marketed EcoSmart products since early 2010 through

17  several channels, including television and print advertisements,

18  point-of-purchase displays, online marketing, and

19  catalogs. (FAC ¶¶ 31-32). Although these allegations regarding

20  secondary meaning do not include specific facts regarding sales

21  volumes or advertising expenditures, they are sufficient at the

22  pleading stage, especially in conjunction with Plaintiff's

23  allegations, supported by exhibits in the form of customer reviews,

24  of actual confusion. (FAC ¶ 57 ("I bought this thinking it was

25  EcoSmart . . . It's NOT THE SAME. Same packaging, same colors,

26  same product line, but Home Depot switched to another company and a

27  slightly different name, trying to fool us customers.".)) See Amini

28  Innovation Corp. v. McFerran Home Furnishings, Inc., 68 F. Supp. 3d

1170, 1173 (C.D. Cal. 2014); <u>Lanard Toys Ltd. v. Novelty Inc.</u>, 511
F. Supp. 2d 1020, 1041 (C.D. Cal. 2007).

**IV.   Conclusion**

For the reasons stated above, Defendants' Motion to
Dismiss is GRANTED in part and DENIED in part. Plaintiff's
copyright claims are dismissed, with prejudice. The motion is
denied with respect to Plaintiff's trade dress claims.

IT IS SO ORDERED.

Dated: 11-15-18

DEAN D. PREGERSON
United States District Judge

13